IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ROGER DARNELL HANNAH, | ) Civil Action No.: 4:07-03512-GRA-TER |
| Plaintiff, | ) |
| vs | ) |
| | ) REPORT AND RECOMMENDATION |
| LARRY POWERS, DIRECTOR, | ) |
| Defendant. | ) |

The *pro se* plaintiff filed this action under 42 U.S.C. § 1983[1] on October 25, 2007. Plaintiff alleges that his constitutional rights were violated due to medical indifference while incarcerated at the Spartanburg County Detention Facility (SCDF). Defendant filed a motion for summary judgment on March 17, 2008. The undersigned issued an order filed March 18, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response on April 21, 2008.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## I. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff alleges that his constitutional rights were violated due to medical indifference and conditions of confinement while at the SCDF. Plaintiff is no longer housed at the SCDF but was returned to Delaware. Plaintiff requests "I want the court to get me a lawyer[2] for my hospital bills-pay for pains and sufferings and punitity[sic] damages, medical neglect for my situations stated in my claims. . . "). (Complaint p. 5).

Defendant filed a motion for summary judgment asserting that plaintiff has failed to state a constitutional deprivation sufficient for recovery and that he is entitled to qualified immunity.

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of

---

[2] There is no right to appointed counsel in Section 1983 cases. Hardwick v. Ault, 517 F.2d 295 (5th Cir. 1975). The court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action. 28 U.S.C. § 1915(d) and Smith v. Blackledge, 451 F.2d 1201 (4th Cir. 1971). However, the appointment "should be allowed only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). There are no unusual circumstances in plaintiff's pleadings which justify the appointment of counsel, nor will the plaintiff be denied due process if an attorney is not appointed

fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. <u>See</u> Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex</u>, 477 U.S. at 322-323.

3

## C. MEDICAL INDIFFERENCE

As previously discussed, plaintiff asserts that defendant was deliberately indifferent to his medical needs. Specifically, plaintiff alleges that he was transferred to the SCDF from another institution where he was a "chronic care paitient[sic] for hypertension, migraines and infected nails." (Complaint p.3). Plaintiff asserts that he arrived with his special needs medications and told the booking staff who said they would take his medication to the medical staff so he could receive them. Further, plaintiff alleges that he was told his medication was placed in his property bin and stored in the property room but was told that he could not have them. Plaintiff asserts that he wrote a medical request to see a doctor about his medications but received the same response each time. Plaintiff asserts that "Director Larry Powers-director is not doing his job of this matter." (Complaint p. 3).

Plaintiff also asserts that he was in an accident during transport to the SCDF and the staff "made transport take me to the emergency room I was seen by a doctor and given some pain pills and muscle relaxers when I arrived back at the jail I was told by the nurse that if I had any more discomfort to write a medical request." Complaint p. 4). Plaintiff asserts that it took medical over a month to issue him "Motrins" for only five days of medications alleging he was in pain while waiting on treatment. Plaintiff also alleges that he was assigned a top bunk which caused him pain getting up and down. In his complaint, plaintiff states "Again Larry Powers-Director failed to see that medical staff is doing there job as to getting

4

inmate proper treatment." (Complaint p. 4).

Plaintiff further alleges that he injured his finger and asked officers to call medical as it was swollen. Plaintiff asserts that he had to wait for one hour before he was called to medical where he had to wait for 2 1/2 hours before being taken to the Emergency Room for x-rays. Plaintiff states that the x-rays revealed his finger was not broken and he was returned back to SCDF. Plaintiff asserts that when he returned, medical at SCDF wrapped his finger and gave him 4 Motrins for pain. However, plaintiff asserts that his finger continued to hurt and remained swollen and he could not bend it. Plaintiff alleges that the wrapping came off which the nurse stated to the officer that it was fine to take it off because it was not broken after medical told him to keep it wrapped. Plaintiff asserts that "Larry Powers-director failed to keep updates and follow ups on medical treatment for inmate." (Complaint p. 5).

In the present case, the plaintiff's allegations are brought against Larry Powers, the Director of the SCDF. Powers submitted his affidavit in which he attests that as the Director of the SCDC he is responsible for the jail's overall operation and management. Powers asserts that the SCDF is generally a pre-trial detainment facility but also houses sentenced inmates on certain occasions. Powers attests that plaintiff was transferred to the SCDF from the Sussex Correctional Institution in Georgetown, Delaware pursuant to the Interstate Agreement on Detainers Act but was returned to Delaware in January 2008. Powers attests that plaintiff's claims that he was denied medical attention are unfounded in that he was treated by the medical staff at the SCDF. Powers asserts that "ordinarily, I defer medical

5

decisions regarding the inmates to the medical staff." (Memorandum). Powers attests that based upon plaintiff's medical records and the affidavit of the nurse at SCDF, Judy Collins, plaintiff was provided treatment by the medical staff at the SCDF and the SCDF contract physician, as well as, treatment by outside medical provides such as the Spartanburg Regional Medical Center and The Carolina Hand Center when it was warranted. (Powers' affidavit, Doc. # 23-3).

Defendant submitted the affidavit of Judy Collins who attests that she is a Registered Nurse and the Nursing Supervisor at the SCDF. Collins attests that she is responsible for assisting and overseeing the medical care of the inmates, arranges for them to be examined by physician when the medical situation necessitates it, and she assists with the distribution of medication to the inmate population. Collins attests that plaintiff was seen on numerous occasions by Dr. Salvatore Bianco, the SCDF physician, and the SCDF Nursing Staff when he made medical complaints. Further, Collins attests that plaintiff was transported to Spartanburg Regional Medical Center and The Carolina Hand Center for examination and treatment when needed. Collins attests that contrary to plaintiff's claims regarding his medications, plaintiff did not bring with him any medication for hypertension nor did he note hypertension as a potential medical problem in his medical history taken upon his arrival to the SCDF. Collins asserts that plaintiff did bring with him an assortment of skin creams and ointments such as Athlete's Foot cream, Triamcinolon, Nystatin, Bacitracin Zinc Ointment, and Hydrocortisone cream, that were placed in his property bin. However, Collins attests that many of the creams were old and had no labels or directions so there was no way to discern whether these tubes held contraband or how the medications were to be used. Collins asserts that for

infection control reasons, the policy at the SCDF is to issue new creams when necessary for inmates suffering from skin afflictions. Collins attests that based on the medical records, plaintiff never complained of a skin affliction requiring treatment or new medications. Further, Collins notes that plaintiff presented to the SCDF with five cards of Excedrin Migraine pills and the numerous amount of cards in his possession showed that he was not taking his medicine with any consistency. Additionally, none of the cards were recent all having dates from April 5, 2007, through June 13, 2007, and the SCDF treats migraines episodically. Collins attests that plaintiff never complained of experiencing symptoms of a migraine and, thus, was not treated for one by the SCDF.

As to the accident plaintiff was involved in during transport on August 21, 2007, Collins attests that plaintiff was examined by Dr. Mike Hellams at SRMC who determined that no hospital care was needed and only recommended acetaminophen and ibuprofen to treat the pain. Plaintiff was returned to the SCDF with no medications or prescriptions from the hospital. However, when he complained of pain in September, Collins attests that plaintiff was given Motrin 400 mg three times a day for five days. Plaintiff was also provided Motrin in October 2007 for treatment of pain. Collins attests that plaintiff made no complaints of back pain after October and made no request for a change of bed for medical reasons. (Collins affidavit and plaintiff's medical records).

On October 10, 2007, plaintiff jammed his left-hand, middle finger in the recreation yard while playing basketball and was evaluated by the medical staff at SCDF. Collins attests that the medical records reflect that plaintiffs' middle finger was noted to be swollen and tender and was buddy-taped by the nurse to keep the finger stabilized. (Collins affidavit, ¶ 8). Plaintiff was given an icepack for the swelling and Tylenol for the pain. Plaintiff was transported to Spartanburg Regional Medical Center for an x-ray which revealed no fracture, dislocation or acute bony

abnormality. (Collins' affidavit and report of SRMC, Exhibit C). Plaintiff was returned to the SCDF and evaluated by the medical staff again on October 11, 2007, when a padded splint was applied to assist with the healing of his middle finger. Plaintiff was prescribed Motrin 200mg for the pain and Nurse Crystal Thompson changed the finger splint on October 13, 2007. (Collins' affidavit, medical records). However, plaintiff continued to complain about pain and, therefore, on November 30, 2007, Dr. Bianco referred plaintiff to The Carolina Hand Center for evaluation and pain medication was prescribed. Id. Plaintiff was evaluated at The Carolina Hand Center on December 6, 2007, and referred to therapy for range of motion exercises. Id. Plaintiff was evaluated again at The Carolina Hand Center on December 20, 2007, and was instructed to continue with active and passive exercises with no further follow-up unless needed. Id. Collins attests that the medical staff at the SCDF attempted to be as accommodating as possible to plaintiff's medical condition and requests, and she does not believe that she or any member of her staff was ever violated any of plaintiff's clearly established constitutional rights. (Collins affidavit, doc.#23-4, and plaintiff's medical records).

The undersigned finds that the plaintiff fails to show that defendant was deliberately indifferent to his medical needs. In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is

8

> manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise.");

10

Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendant's actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

The plaintiff has failed to show that he was denied medical treatment. Plaintiff was seen in medical and at the SRMC after the accident in the transport van, was seen in medical after injuring his finger, was seen by outside medical providers and received care at Spartanburg Regional Medical Center and The Carolina Hand Center. Plaintiff received x-rays, a split, and pain medication. Further, the medical records reveal that plaintiff did not suffer with a broken or dislocated finger. Plaintiff was prescribed medication for his complaints of back pain and did not continue to complain. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by this defendant "shocks the conscious" as required by Miltier v. Beorn, supra.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long

11

as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v. Sheffer, supra. Thus, although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendant on this issue.

Additionally, any claims of medical indifference as to defendant Powers should be dismissed as he is not medical personnel and plaintiff has not shown that he interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of

treatment. *Id.* Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that defendant was personally involved with any alleged denial or delay of treatment or that he deliberately interfered with plaintiff's medical treatment. Therefore, any claims against the defendant for medical indifference fails.

### D. CONDITIONS OF CONFINEMENT

Plaintiff also alleges in his complaint that due to unsanitary conditions including dirty showers, dirty rooms, and unsanitary mop water, he developed a severe foot fungus causing his toenail to separate from his toe. Plaintiff alleges that he told and showed the nurse but that no action was taken. Plaintiff asserts that "Larry Powers director failed to make sure that medical staff is doing a updated job on this matter." (Complaint p. 4).

Defendant submitted the affidavit of Judy Collins, nursing supervisor, who attests that based on the medical records, plaintiff complained of a fungai infection under his toenails on October 11, 2007, while being examined by the nurse for a finger injury. Collins attests that plaintiff was evaluated by Dr. Bianco who did not order any treatment for the condition. Collins attests that plaintiff did not submit requests to the medical staff at the SCDF for any further treatment of this condition. (See Collins' affidavit and plaintiff's medical records, Exhibit C).

Powers attests in his affidavit that the SCDF takes numerous measures to maintain the cleanliness of the facility and the common areas, cells, and showers are routinely cleaned and sanitized. Powers attests that beyond the general cleaning provided by the SDCF, inmates are also allowed to clean their individual cells and are provided with cleaning supplies, such as a mop and

13

broom, and a cleaning solution known as Tackle, which is a cleaner, disinfectant, and a deodorizer. Powers attests that plaintiff never complained to him about any unsanitary conditions at the SCDF. (Powers affidavit, doc. # 23-3).

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Court of Appeals for the Fourth Circuit considered the case of Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993). The Court in Strickler said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute an Eighth Amendment violation if considered in aggregate, McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, 469 U.S. 819 (1984). However, to be considered in aggregate, conditions must have mutually enforcing effects that produce a deprivation of a single, identifiable need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294 (1991). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Plaintiff has failed to prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendant. Strickler, supra.

Plaintiff only made general allegations that the showers were dirty and the rooms were dirty due to unsanitary mop water. As a result, plaintiff alleges he contracted a severe foot fungus. However, plaintiff has not provided any evidence that he continued to complain or file any further complaints regarding this matter. There is nothing presented to show that plaintiff ever complained again of a fungus under his toenail while at SCDF. The plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381. The undersigned concludes that he has failed to produce any evidence of serious or significant physical or emotional injury resulting from his allegations. Accordingly, the undersigned recommends that summary judgment for the defendant be granted on these claims.

This Court is required to construe pro se complaints and petitions liberally. Such pro se complaints and petitions are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 9 (1980). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a pro se complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). However, even under this less stringent standard, the Complaint in the captioned case is subject to summary dismissal because plaintiff has failed to set forth a claim for which relief can be granted. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't of Social Svcs., 901 F.2d 387 (4th Cir. 1990).

Additionally, the inmate must show more than de minimis pain or injury. Id. at 9. Although a plaintiff need not show a significant injury, the court in Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Plaintiff has failed to meet this burden.

### E. QUALIFIED IMMUNITY

Defendant argues that he is entitled to qualified immunity.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendant violated any of his clearly established constitutional or statutory rights. Therefore, defendant is entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendant's motion for summary judgment be granted on this issue.

## F.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

17

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## II.  CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendant (document #23) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

                                              Respectfully Submitted,

                                              s/Thomas E. Rogers, III
                                              Thomas E. Rogers, III
                                              United States Magistrate Judge

January 21 , 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**